Jerrin A. WRIGHT, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 84, 2007.

Supreme Court of Delaware.

Submitted: Jan. 9, 2008.

Decided: Feb. 7, 2008.

---

Joseph A. Hurley, Esquire, Wilmington, DE, for Appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

The defendant-below appellant Jerrin Wright ("Wright") appeals from a Superior Court final judgment of conviction, of second degree murder, reckless endangering in the first degree, and two counts of possession of a firearm during the commission of a felony. On appeal, Wright claims that the Superior Court erred by refusing to instruct the jury on the defense of accident. We find no merit to Wright's claim and affirm.

### FACTS

On July 23, 2005, Scott Lubitz, while standing outside the Nu–Phaze Bar and Grill, was fatally shot by Wright. Lubitz was an innocent bystander who was witnessing an argument between Wright and another bar patron, Roland Harris.

Shortly before the closing time at the Nu–Phaze Bar and Grill, Harris went outside to the parking lot, and was talking with two men when he noticed Wright looking at him. Harris and Wright had known each other for approximately 13 years, since high school. Because it was closing time, several other persons were also in the parking lot. Harris asked Wright why was he looking at him, and a verbal argument resulted. Wright displayed a handgun that was tucked in his waistband. After Harris told Wright that he was not "scared of a gun," Wright pulled the gun out and pointed it at Harris. Continuing to reaffirm his lack of fear, Harris moved towards Wright, who then fired two shots in Harris' direction. The shots whizzed by either side of Harris, who continued "going after" Wright through the parking lot. Wright backed away, but continued to shoot in Harris' direction. According to Harris, Wright shot the gun "four, five times." At that point, Harris' uncle told Harris to "chill," because Wright had shot someone. While Harris was being restrained by his uncle, Wright continued shooting and then retreated to his car. Wright fired one more shot at Harris, and drove away, threatening to kill Harris. At trial, Harris testified that Wright had fired "[m]aybe nine or ten" times all together. The police recovered five 9 mm casings, all fired from the same gun. At trial, it was established that one of Wright's shots had struck Lubitz in the head, killing him.

For shooting at, and narrowly missing Harris, Wright was charged with, and convicted of, reckless endangering in the first degree.[1] For killing Lubitz, Wright was charged with murder in the first degree, specifically, recklessly causing the death of Lubitz while committing the felony of reckless endangering Harris.[2] The jury, however, convicted Wright of the lesser

---

1. 11 *Del. C.* § 604.

2. Under 11 *Del. C.* § 636(a)(2), a person is guilty of murder in the first degree when the person *recklessly* causes the death of another person, "while engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony."

included offense of murder in the second degree *i.e.*, causing the death of Lubitz with *criminal negligence* during the commission of another felony.[3]

With respect to the charges associated with Lubitz's death, the jury was instructed on murder in the first degree, as well as the lesser included offenses of murder in the second degree, manslaughter,[4] and criminally negligent homicide.[5] At trial, Wright requested a jury instruction on the defense of accident. Concluding that accident was not a legally tenable defense given the undisputed facts in this case, the Superior Court, ruling from the bench, denied Wright's request for an accident instruction, as follows:

> [I]n reading the accident cases ... it befuddles me how it would be an accident. Those cases basically are: I thought the gun was empty; I didn't mean to pull the trigger; I though the safety was on. Not multiple times and actually there is some case law, I think from Justice Holland, when you fire a gun several times and it's not a machine gun, when you go through and pull the trigger, that's not an accident. You may not intend for somebody to die, but that is not what an accident is about.

This appeal followed.

## ANALYSIS

On appeal, Wright claims that the trial court erred in not instructing the jury on

the defense of accident. He argues that Lubitz's death was "the result of an unfortunate accident" and that Lubitz was not the "target of his anger." The sole merits issue is whether an accident instruction was required.

### *The Standard of Review*

The Superior Court refused to give the requested jury instruction, because it determined that accident was not a legally available defense under the facts of the case, based on the evidence presented. A threshold issue that we must first decide is the applicable standard of review, which the parties dispute.

■ Where a trial court is asked to give a jury instruction in a criminal case, the court must determine: (1) that the defense or lesser included offense for which the instruction is requested could apply as matter of law; (2) that the evidence presented meets the statutory requirements to entitle the defendant to the requested instruction; and (3) whether the particular form, content, or language of the instruction proposed by the defendant represents a correct statement of the law.[6]

■ To perform the first two steps of the analysis, a trial court must look at the relevant statutory provisions governing the availability of instructions: 11 *Del. C.* § 303(c)[7] (for instructions on statutory defenses, such as justification); 11 *Del. C.*

---

3. Under 11 *Del. C.* § 635(2), a person is guilty of murder in the second degree when the person, with *criminal negligence*, causes the death of another person, "while engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony."

4. 11 *Del. C.* § 632(1).

5. 11 *Del. C.* § 631.

6. *See Claudio v. State*, 585 A.2d 1278, 1282 (Del.1991) ("A defendant has no right to have

the jury instructed in a particular form. However, a defendant is entitled to have the jury instructed with a correct statement of the law.")

7. 11 Del. C. § 303(c) relevantly provides: "If some credible evidence supporting a defense is presented, the defendant is entitled to a jury instruction that the jury must acquit the defendant if they find that the evidence raises a reasonable doubt as to the defendant's guilt."

§ 206(c)[8] (for instructions on lesser included offenses); and 11 *Del. C.* § 302(b)[9] (for instructions on other issues or matters, including accident). If the court determines that in light of the evidence presented the requested instruction is not available under the relevant statute, on appeal a question of law is presented: did the trial court, in determining the litigant's entitlement to a jury instruction, properly apply the relevant statutory provision to the facts at bar? Therefore, our review of the trial court's refusal to give the jury instruction is *de novo.*[10]

■ If, however, the trial court determines that in light of the evidence presented the requested instruction is legally available, and gives the instruction—but not with the exact form, content, or language proposed by the defendant—we review that determination for an abuse of discretion.[11]

■ To summarize, this Court will review *de novo* a refusal to instruct on a defense theory (in any form); and it will review a refusal to give a "particular" instruction (that is, an instruction is given but not with the exact form, content or language requested) for an abuse of discretion. To the extent that some of our previous decisions appear to suggest a standard of review different from that announced here,[12] we overrule them.[13]

---

**8.** 11 *Del. C.* § 206(c) pertinently states: "The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense."

**9.** 11 *Del. C.* § 302(b) pertinently provides: "The defendant may produce whatever evidence the defendant has tending to negate the existence of any element of the offense, and, if the court finds that a reasonable juror might believe that evidence, the defendant is entitled to a jury instruction that the jury must consider whether the evidence raises a reasonable doubt as to the defendant's guilt."

**10.** That conclusion is fully consistent with *Lunnon v. State* and its progeny. *Lunnon,* 710 A.2d 197 (Del.1998) (holding that "[t]he standard of review of denial to give a jury instruction is plenary or *de novo* ") (citing *State v. Guthman,* 619 A.2d 1175, 1177 (Del. 1993) and *Seth v. State,* 592 A.2d 436, 439 (Del.1991) which both stand for the proposition that questions of law are subject to plenary review by this Court). *See also, e.g., Bentley v. State,* 930 A.2d 866 (Del.2007); *Perkins v. State,* 920 A.2d 391 (Del.2007); *Guy v. State,* 913 A.2d 558 (Del.2006); *Pierce v. State,* 911 A.2d 793 (Del.2006); *Smith v. State,* 913 A.2d 1197 (Del.2006); *Miller v. State,* 893 A.2d 937, 2006 WL 587586 (Del.Supr.); *Keyser v. State,* 893 A.2d 956, 2006 WL 389993 (Del.Supr.); *Wien v. State,* 882 A.2d 183 (Del. 2005); *Hendricks v. State,* 871 A.2d 1118,

2005 WL 941572 (Del.Supr.); *Ayers v. State,* 844 A.2d 304 (Del.2004); *Gutierrez v. State,* 842 A.2d 650 (Del.2004); *Capano v. State,* 781 A.2d 556 (Del.2001); *Yocum v. State,* 777 A.2d 782 (Del.2001); *Burrell v. State,* 766 A.2d 19 (Del.2000).

**11.** *See, e.g., Miller v. State,* 893 A.2d 937 (Del. 2006); *Carter v. State,* 873 A.2d 1086 (Del. 2005); *Fuller v. State,* 860 A.2d 324 (Del. 2004); *Garden v. State,* 815 A.2d 327 (Del. 2003); *Jones v. State,* 798 A.2d 1013 (Del. 2002); *Price v. State,* 1996 WL 526013 (Del. Supr.); *Atkins v. State,* 523 A.2d 539 (Del. 1987).

**12.** *See, e.g., Drake v. State,* 929 A.2d 768, 2007 WL 1626635 (Del.Supr.); *Staats v. State,* 902 A.2d 1125 (Del.2006); *Scott v. State,* 1999 WL 652054 (Del.Supr.); *Hackett v. State,* 1999 WL 624108 (Del.Supr.); *Smith v. State,* 1996 WL 539851 (Del.Supr.); *Carvalho v. State,* 1996 WL 343817 (Del.Supr.); *McNally v. Eckman,* 466 A.2d 363 (Del.1983).

**13.** As a practical matter, even under an abuse of discretion standard, the result is the same. Our precedents that refer to an abuse of discretion standard are consistent with the standard of review applied by the United States Court of Appeals for the Third Circuit in similar appeals challenging the refusal to give a requested jury instruction. In that context, *de novo* review is part of that overarching abuse of discretion standard. The Third Circuit has

■ Because in this case the requested instruction was not given in any form, we review Wright's claim *de novo* to determine (i) whether the accident "defense" was available as a matter of law, and, (ii) if so, whether the evidence presented at trial was sufficient to support an accident instruction. Because we conclude that the accident defense was not legally available, we do not reach the second prong of the analysis.

### The Availability Of An Accident "Defense"

■ Because it is not expressly listed and defined in Chapter 4 of the Delaware Criminal Code (Title 11) or in any other Delaware statute, "accident" is not a statutory defense to a criminal charge. In prior cases, we have approved instructions that define accident as "an unforeseen, unplanned, fortuitous," "sudden and unexpected event occurring without intent or volition due to carelessness, unawareness, ignorance or a combination of these which produces an unfortunate result."[14] We have, however, held that evidence of accident may be adduced under 11 *Del. C.* § 302(b), and that such evidence, if believed, "could negate either or both the culpable state of mind *and* the voluntariness of the act."[15]

■ The defense of accident may be raised to show that the defendant cannot be culpable of the offense charged because the defendant's conduct was not a voluntary act,[16] defined as "a bodily movement performed consciously … as a result of effort or determination."[17] In this case, the defense of accident was not available to negate the requirement of a "voluntary act," because it is undisputed that Wright intentionally and voluntarily pulled the trigger and fired his gun several times in a crowded place. That conduct was the "but for" cause of Lubitz's tragic death.[18]

The question is whether the accident defense was, nonetheless, legally available to show that the defendant lacked the culpable state of mind required for conviction. For killing Lubitz, Wright was charged with first-degree murder—a crime that required *recklessness* as the state of mind. Wright requested—and obtained—jury instructions on lesser included offenses. For some of those offenses, *negligence* was the required state of mind. Ultimately, the jury found Wright guilty of the lesser

described the abuse of discretion standard of review this way:

> The district court's refusal to give a requested jury instruction is reviewed for an abuse of discretion. In determining whether the district court abused its discretion, this Court evaluates whether the proffered instruction was legally correct, whether or not it was substantially covered by other instructions, and whether its omission prejudiced the defendant. However, inasmuch as we review a court's refusal to instruct the jury on a defense theory *de novo*, it would have been an abuse of discretion if the defendants were entitled to a … charge and the court refused to give it.

*United States v. Pitt*, 193 F.3d 751, 755–56 (3d Cir.1999) (internal quotation marks and citations omitted).

14. *Burrell v. State*, 766 A.2d 19, 25 (Del.2000). *See also Berry v. State*, 2002 WL 1484510, at *5 (Del.Supr.); *Bullock v. State*, 775 A.2d 1043, 1052 (Del.2001).

15. *Hall v. State*, 431 A.2d 1258, 1260 (Del. 1981) (italics added). *See also Ward v. State*, 366 A.2d 1194, 1196 (Del.1976).

16. *See* 11 *Del. C.* § 242 (unless a voluntary act provides the basis for a person's conduct, that person cannot be found guilty of the offense charged).

17. 11 *Del. C.* § 243.

18. *See* 11 *Del. C.* § 261 ("[c]onduct is the cause of a result when it is an antecedent but for which the result in question would not have occurred").

included offense of second-degree murder, more specifically, causing Lubitz's death by an act of criminal negligence while engaged in the commission of the felony of recklessly endangering Harris' life.

Relying on *Smith v. State*[19] and *Capano v. State*,[20] the State argues that no accident defense or instruction was legally available to Wright because, under the facts of the case (pulling the trigger at least five times in a crowded place), Wright's conduct could not have fallen below the level of recklessness or criminal negligence. In *Smith*, we noted that "self-defense and accident defenses are contradictory to reckless conduct," such that "if an act is done recklessly, it cannot be due to an accident."[21] Similarly, in *Capano*, we held that "an accident defense is incompatible with recklessness or criminal negligence."[22] In both cases, we determined that the trial court properly gave an accident instruction, and properly refused to instruct on lesser included offenses, because in both cases there was no evidentiary basis to conclude that the defendant had acted with recklessness or criminal negligence. Here, we face the opposite question: did the trial court properly instruct the jury on lesser included offenses yet improperly refuse to instruct the jury on accident? The Superior Court determined, based on the evidence presented at

trial, that no reasonable juror could conclude that Wright's conduct lacked criminal culpability. We agree with the Superior Court's reasoning and result.

■ Under 11 *Del. C.* § 302(b), a defendant is entitled to a jury instruction on accident only if the court finds that the evidence presented tends to negate an element of the offense and a reasonable juror might believe that evidence. To find Wright guilty, the jury had to determine that, in killing Lubitz, Wright acted with recklessness or criminal negligence. Under 11 *Del. C.* § 231(d), criminal negligence is established when a person "fails to perceive a risk that the element exists or will result from the conduct [which] risk must be of such a nature and degree that failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[23] We conclude, for the reasons next discussed, that the Superior Court correctly found that Wright had been, at the very least, criminally negligent and, therefore was not legally entitled to an accident instruction.

■ As the Superior Court noted, the cases where an accident instruction was given were mostly "single shot" cases involving claims of accidental discharge of a firearm.[24] To be sure, as Wright correctly

---

19. 1996 WL 539851 (Del.Supr.).

20. 781 A.2d 556 (Del.2001).

21. *Smith v. State*, 1996 WL 539851, at *3 (citing *State v. Miller*, 772 S.W.2d 782, 784 (Mo.App.1989)) (holding that the trial court correctly denied an instruction on a lesser included offense—requiring recklessness—because the request for such an instruction was "in contradiction to the defenses on which the jury was instructed," namely justification and accident).

22. *Capano v. State*, 781 A.2d at 632–33 *cert. denied* 536 U.S. 958, 122 S.Ct. 2660, 153 L.Ed.2d 835 (2002) (citing *Smith v. State*,

1996 WL 539851 and *Hall v. State*, 431 A.2d 1258, 1260 (Del.1981)) (holding that the trial court correctly refused to give jury instructions on lesser included offenses to first degree murder—requiring recklessness or criminal negligence as opposed to intent—because there was no basis in the evidence for finding reckless or negligent conduct where, at trial, the defendant presented an accident defense and received an accident jury instruction).

23. *See* 11 *Del. C.* § 231(d).

24. *See State v. Hill*, 82 A. 221, 222 (Del.Gen. Sess.1911) (if defendant "unintentionally, and by accident merely, discharged the gun he

argues, an accident "defense" is not limited, as a matter of law, to accidental discharges. Moreover, Delaware case law recognizes a "strong policy favoring [the] submission of factual issues to the jury," including issues of credibility and determinations with respect to the defendant's *mens rea* at the time of the offense.[25] Nonetheless, *no facts or evidence supporting an accident instruction are present here.*

Although Wright did not subjectively intend to kill Lubitz and did not purposely fire his gun in Lubitz's direction, one of the five or more shots he fired nevertheless struck and killed Lubitz. Whether or not that act of shooting was criminal depends on several factors, such as the foreseeability of the injury and the degree of negligence or recklessness involved.

On that issue, *State v. Walls*[26] is instructive. There, the defendant, while deer hunting on a foggy day, shot a high-powered rifle towards a busy highway, striking an unsuspecting motorist in the head. The Superior Court held the defendant was not entitled to an accident instruction, because the resulting injury to the motorist was a "likely result" of defendant's conduct, which was "obviously reckless."[27] *Walls* is instructive here, because Wright's repeated and random discharging of a handgun in the dark and in a populated parking lot constituted "a gross deviation from the standard of conduct that a reasonable person would observe in the situation,"[28] and because Lubitz's death was a "foreseeable consequence" of Wright's actions. Wright's conduct, the jury found, satisfied the recklessness standard with respect to Harris and the criminal negligence standard with respect to Lubitz.[29] Because Wright's conduct never fell below the level of criminal negligence, the Superior Court correctly held that, as a matter of law, Wright was not entitled to a jury instruction on the "defense" of accident.

ought not to be convicted"); *Hall v. State,* 431 A.2d 1258, 1259 (Del.1981) (accident instruction given when defendant claimed gun accidentally discharged); *Ward v. State,* 366 A.2d 1194, 1197 (Del.1976) (accident instruction appropriate where victim told the police that shooting was purely accident); *Perkins v. State,* 920 A.2d 391, 398–99 (Del.2007) (accident instruction given to first-degree murder charge where defendant claimed that the gun went off accidentally while he was climbing a fire escape); *State v. Gattis,* 2005 WL 3276191, at *2 (Del.Super.) (jury instruction on the defense of accident given where defendant claimed that the pistol accidentally discharged as he kicked open an apartment door); *Burrell v. State,* 766 A.2d 19, 22, 25 (Del.2000) (instruction on accident appropriate, but instruction on ignorance or mistake of fact not appropriate where defendant believed that the gun was unloaded and/or that the safety was engaged). *See also Mole v. State,* 396 A.2d 153, 155 (Del.1978) and *Newell v. State,* 1992 WL 53433, at *2 (Del.Supr.) (in both cases, defendant claimed that the shooting was accidental but the Court held

that the evidence of accidental shooting was self-serving and did not constitute, under the plain error standard, the quantum of evidence required to support defendant's claim that the trial judge erred in failing to give an accident instruction *sua sponte*).

25.  *Hall v. State,* 431 A.2d 1258, 1259 (Del. 1981); *Henry v. State,* 805 A.2d 860, 865–66 (Del.2002).

26.  *State v. Walls,* 2007 WL 404765, at *1 (Del.Super.).

27.  *Id.* (the defendant did however receive an "unavoidable accident" instruction).

28.  11 *Del. C.* § 231(d) (defining negligence).

29.  *Gray v. State,* 441 A.2d 209, 223 (Del.1981) (holding that where a voluntary act is found, the actor is responsible for the natural and foreseeable consequences of that act, even when other causes may have contributed to the ultimate result).

## CONCLUSION

The judgments of the Superior Court are affirmed.